IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHAD MICHAEL REESE,                          No. 3:16-cv-02405-HZ

        Plaintiff,                                 OPINION & ORDER

      v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

Jeremy L. Bordelon
Evergreen Disability Law
465 NE 181st Avenue, #500
Portland, Oregon 97230

        Attorneys for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Sarah Elizabeth Moum
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Chad Michael Reese brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) improperly discrediting Plaintiff's subjective symptom testimony, and (2) improperly discrediting the opinions of Plaintiff's therapists, Nicole Fricano, MA, QMHP; and Brittany Neighbours, MA, QMHP. I affirm the Commissioner's decision.

## BACKGROUND

Plaintiff applied for DIB on March 29, 2013, alleging a disability onset date of January 18, 2012. Tr. 9, 28, 132. 141.[1] Plaintiff's application was denied initially and upon reconsideration. Tr. 9, 77–80, 83–85. Plaintiff's administrative hearing was held on April 1, 2015, before ALJ Rudolph Murgo. Tr. 26. The ALJ denied Plaintiff's claim in a written decision issued on October 1, 2015. Tr. 9–21. The Appeals Council denied review, rendering the ALJ's decision final. Tr. 1–3.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

---

[1] "Tr." refers to the administrative record transcript, filed here as ECF 11.

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 18, 2012. Tr. 11.

At step two, the ALJ determined Plaintiff had the following severe impairments: affective disorder, anxiety disorder, and schizophrenia. Tr. 11–13.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 13–14.

Before step four, the ALJ determined Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations: "[Plaintiff] is limited to low stress work typical of jobs with specific vocational and preparation (SVP) ratings of 1 or 2. He can also have no public contact." Tr. 14–20.

At step four, the ALJ determined Plaintiff is capable of performing his past relevant work as a warehouse clean-up worker. Tr. 20–21. Accordingly, the ALJ found Plaintiff not disabled on that basis.

In the alternative, at step five the ALJ concluded that other jobs existed in the national economy that Plaintiff could perform, including work as a clean-up worker, hand packager, and kitchen helper. Tr. 21. Accordingly, the ALJ also concluded Plaintiff was not disabled on this basis. Tr. 21.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal

quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following two errors. First, the ALJ improperly discredited Plaintiff's subjective symptom testimony. Second, the ALJ improperly discredited the opinions of Plaintiff's therapists, Ms. Fricano and Ms. Neighbours.

## I. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ improperly rejected his testimony regarding the severity and extent of his limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted). As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the administrative hearing on April 1, 2015, Plaintiff testified he is unable to work as a result of his mental-health conditions. Tr. 34. Plaintiff reported he experiences auditory hallucinations, visual hallucinations, and anxiety. Tr. 41, 43–45. Plaintiff testified his mental-health conditions make him uncomfortable around people he does not know, and that he is "not good with other people," but that he "can be friendly." Tr. 41–42. Plaintiff reported stress makes his symptoms worse and, in particular, that even low-stress work exacerbates his symptoms

because he is unable to manage his symptoms at work as well as he is able to at home. Tr. 42–43, 45. Plaintiff indicated he has suffered from these symptoms since high school. Tr. 46.

Plaintiff stated he goes to the store "about once a day" and takes out the garbage, but that his mother cooks for the household and he does not do laundry or dishes, vacuum, or clean around the house. Tr. 35–37. Plaintiff testified he does not drink alcohol or use street drugs, but that he smokes two "bowls" of marijuana per night and that the marijuana helps manage his mental-health symptoms. Tr. 37.

In an Adult Function Report filed April 30, 2013, Plaintiff reported his anxiety makes it "very difficult to handle people and stress" or to focus on tasks, and it causes him to be irritable. Tr. 165. Plaintiff also noted his mental-health conditions make him paranoid, that he suffers from a "sense of doom . . . almost daily," and that it is difficult for him to fall asleep because he "can't stop thinking about [his] paranoias." Tr. 165–66, 172. Plaintiff reported his conditions render him unable to "[h]andle the stress of working." Tr. 166. Plaintiff indicated his conditions affect his abilities to complete tasks, concentrate, and get along with others, and that his anxiety diminishes his ability to get along with authority figures. Tr. 171.

In a typical day, Plaintiff indicated he spends time with his child, wife, and parents; plays games; talks to family and friends; and watches television. Tr. 166. Plaintiff reported he spends approximately one hour per day doing yard work in the summer, gets out of the house daily, and goes to the store for "household staples" and snacks approximately twice per week. Tr. 168.

The ALJ discredited Plaintiff's testimony for the following reasons: (1) Plaintiff failed to seek mental-health treatment for a year after the alleged onset date; (2) Plaintiff's testimony was inconsistent with his presentation to health-care providers; (3) inconsistency in Plaintiff's symptom reporting; (4) inconsistency in Plaintiff's use of prescribed medications; (5) activities

of daily living and a degree of social functioning inconsistent with Plaintiff's allegations of disability; (6) Plaintiff's inconsistent reporting regarding his use of drugs and alcohol; and (7) inconsistencies between Plaintiff's testimony and other matters in the record.

As noted, the ALJ first discredited Plaintiff's testimony on the basis that he failed to seek mental-health treatment for more than a year after the alleged onset date of disability. An "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" is an appropriate basis on which to discredit a claimant's testimony. *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). Plaintiff applied for disability on March 29, 2013, and alleged an onset date of January 18, 2012. Tr. 9, 28, 132. The first record of any treatment in the administrative record is dated December 20, 2012, at which Lesley I. Ryan, M.D., indicated Plaintiff's anxiety had been "ongoing several years," but that it had "never [been] evaluated prior." Tr. 227. There is not any explanation in the record why Plaintiff sought disability exclusively on the basis of his mental-health conditions beginning January 18, 2012, but did not receive treatment for any such conditions until almost a year after the alleged onset date of disability. Plaintiff contends his failure to seek mental-health treatment before December 2012 was a result of Plaintiff's "belief that he could deal with his psychoses on his own." Plaintiff's Brief (#14) at 10. Although Plaintiff's explanation, tendered for the first time on appeal, may be plausible, the ALJ's conclusion is a reasonable interpretation of the record. Accordingly, on this record, the Court finds the ALJ appropriately discredited Plaintiff's testimony of long-standing, disabling mental-health conditions on this basis.

Second, the ALJ noted Plaintiff's testimony was not corroborated by his presentation to mental-health providers. As the ALJ noted, mental-status examinations often revealed normal or mild findings. *See, e.g.*, Tr. 229, 239, 249, 280, 429, 438, 442, 465. Moreover, clinicians

repeatedly assigned to Plaintiff a global assessment of function ("GAF") score that indicated Plaintiff has only mild or moderate limitations from his mental-health conditions. Tr. 257, 312, 431. The ALJ also noted Dr. Ryan observed on March 25, 2013, that Plaintiff appeared "pretty set" on pursuing disability, and that Dr. Ryan discussed the "risks and downsides" to doing so. Tr. 242. Similarly, on April 23, 2013, Dr. Ryan stated she "encouraged patient to be open to getting better even though he has applied for disability and feels like he will never get better." Tr. 249. The Court notes, however, that there were also several instances in the record in which clinicians reported Plaintiff appeared anxious or otherwise in distress. Accordingly, although the Court finds the ALJ reasonably identified inconsistency between Plaintiff's testimony of severe mental-health symptoms and his presentation to medical and mental-health care providers as a reason to discredit Plaintiff's testimony, this rationale carries only some weight.

Third, as noted, the ALJ discredited Plaintiff's testimony on the basis that Plaintiff's symptom reporting to providers was inconsistent throughout the record. As the ALJ noted, Plaintiff did not indicate to any treatment provider that he suffered from visual or auditory hallucinations until March 2013 when he reported to Dr. Ryan that he suffered from "mild" visual hallucinations. Tr. 241. On September 11, 2013, however, Plaintiff told his therapist, Ms. Fricano, that he had experienced visual hallucinations since 2010 or 2011. Tr. 269. The following month Plaintiff told Brooke Sheehan, PMHNP, that he had experienced hallucinations for four years. Tr. 317.

Even more notably with respect to auditory hallucinations, in May 2014 Plaintiff said such hallucinations began "years ago," and in September 2014 Plaintiff stated he had experienced auditory hallucinations for "many years." Tr. 412, 449. Similarly, in April 2014 Plaintiff indicated he had heard voices in his head since childhood. Tr. 457. As recently as

December 2013, however, Plaintiff told Ms. Fricano that he had not experienced any auditory hallucinations, and the first indication in the record that Plaintiff experienced auditory hallucinations was in April 2014. Tr. 457, 475. Plaintiff explains these inconsistencies by contending he did not "open up" to therapists and mental-health service-providers with whom he was unfamiliar, and because fluctuation in symptoms is common with many mental-health disorders. Plaintiff's Brief (ECF 14) at 10–11. Again, however, this explanation is not the only explanation that can be drawn from the record, and the ALJ's interpretation of the record is reasonable. Moreover, the ALJ did not discredit Plaintiff's testimony on the basis that his symptoms fluctuated; the ALJ discredited Plaintiff's testimony because his reporting of symptoms to treatment-providers was contradictory. The Court, therefore, finds the ALJ reasonably discredited Plaintiff's symptom testimony on this basis.

Fourth, the ALJ discredited Plaintiff's testimony because Plaintiff was not consistently compliant with his medication regimen. A claimant's unexplained failure "'to follow a prescribed course of treatment'" is a valid basis on which the ALJ may discredit the claimant's testimony. *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284). Although, as the ALJ pointed out, the record contains instances in which Plaintiff unilaterally stopped taking his medication, those instances were largely explained in the record as being a result of side effects or the lack of medication efficacy. Tr. 459, 475. Viewed as a whole, the record reflects that although Plaintiff and his treatment providers had considerable difficulty finding a stable medication regimen for Plaintiff, the record does not support the ALJ's conclusion that such difficulty was caused by Plaintiff's lack of need for such medication contrary to Plaintiff's testimony of severe mental-health limitations. Accordingly, the Court does not ascribe any weight to this reason to discredit Plaintiff's testimony.

Fifth, the ALJ discredited Plaintiff's testimony because it was inconsistent with his activities of daily living and degree of social functioning as reflected throughout the record. The ALJ first points out that Plaintiff's daily activities including caring for his three-year-old son and his abilities to drive, to use a computer, to take out the garbage, to go shopping, to do yard work, to regularly play video games, to periodically exercise, and to go fishing regularly are inconsistent with Plaintiff's subjective symptom reporting. The Court, however, disagrees that these activities, by themselves, are inconsistent with Plaintiff's reported mental-health symptoms including paranoia, hallucinations, and anxiety.

The ALJ, however, also noted Plaintiff reported to Ms. Fricano on January 23, 2015, that he was "considering working part-time, as long as the job is 'low stress.'" Tr. 388. The ALJ could reasonably find this inconsistent with Plaintiff's April 1, 2015, hearing testimony that "working in general" makes his symptoms worse and that "[a]ny type of stress at all whether it be low or high stress makes [his] symptoms worse." Tr. 42. Moreover, Plaintiff testified he is unable to function reliably in the workplace because "at home I can take myself away from everything, and just curl up into a ball if I have to. Which I can't do at work." Tr. 42–43. That limitation, however, would equally preclude part-time and full-time work, and, therefore, the ALJ could reasonably find Plaintiff's hearing testimony inconsistent with his January 23, 2015, report to Ms. Fricano. In light of the temporal proximity of the two statements, this is a compelling reason to discredit Plaintiff's testimony regarding the extent to which his mental-health conditions affect his ability to work.

Moreover, the ALJ noted Plaintiff's testimony was inconsistent regarding his social functioning. At the administrative hearing Plaintiff testified he is "not good" and "uncomfortable" with unfamiliar people, but insisted that he can nonetheless be friendly. Tr. 41–

42. The ALJ, however, found the record reflects Plaintiff "is able to engage in some limited social activities" because Plaintiff was able to go shopping daily, to go to the park with his son, and to interact appropriately with a disability investigator who made a visit to Plaintiff's home. Tr. 16, 260, 502–03. The ALJ reasonably discredited Plaintiff's allegations regarding significant social-functioning limitations on this basis.

Sixth, the ALJ discredited Plaintiff's testimony on the basis that Plaintiff has been "inconsistent in reporting his drug and alcohol use to his treatment providers." Tr. 16. The ALJ noted there were instances in which Plaintiff failed to disclose to treatment providers that he used marijuana on a daily basis. Tr. 260, 310. Although the ALJ correctly noted instances in which Plaintiff was at least not forthcoming regarding his marijuana use, the record as a whole reflects that Plaintiff frequently and openly discussed his marijuana use with treatment providers who, although they never endorsed his use of marijuana, did not directly advise Plaintiff against it. Accordingly, the Court finds the ALJ reasonably identified instances in which Plaintiff was not forthcoming about his marijuana use, but that this is not a compelling reason to discredit his symptom testimony.

Finally, the ALJ discredited Plaintiff's testimony on the basis of other inconsistencies in the record. In particular, the ALJ noted Plaintiff reported in September 2013 that despite increasing mental-health symptoms, he and his wife were trying to have a second child. The Court does not find this to be materially inconsistent with Plaintiff's testimony. The ALJ also noted that Plaintiff testified his wife was considering for filing for disability due to severe anxiety and post-traumatic stress disorder, but also reported to Ms. Fricano that there were "large chunks of time in which [his] wife has to assume all parenting responsibilities." Tr. 463. Although the Court finds the ALJ could reasonably conclude Plaintiff's report to Ms. Fricano

was inconsistent with his hearing testimony, the Court concludes it does not provide significant additional support for the ALJ's credibility determination.

Although the Court does not find all of the ALJ's reasons for discrediting Plaintiff's testimony to be supported by substantial evidence, it nonetheless concludes the ALJ cited clear and convincing reasons supported by substantial evidence to discredit Plaintiff's subjective symptom testimony. *See Baston v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). On this record, therefore, the Court concludes the ALJ did not err when he discredited Plaintiff's testimony because he provided legally sufficient reasons for doing so.

## II.   Opinions of Neighbours and Fricano

Plaintiff next contends the ALJ erred when he discredited the opinions of Plaintiff's therapists, Brittany Neighbours, QMHP, and Nicole Fricano, QMHP.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" or "other sources" include, but are not limited to, nurse practitioners, therapists, LCSWs, and chiropractors. SSR 06-03p, at *2. QMHPs are classified as "other sources." *Moon v.* Colvin, 139 F. Supp. 3d 1211, 1222 (D. Or. Sept. 30, 2015)(citing 20 C.F.R. § 404.1513(d); *Molina*, 674 F.3d at 1111). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay-witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because a physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons); *see also Sauvageau v. Colvin*, No. 3:14–cv–01932–AA, 2016 WL 1222245, at *5–6 (D. Or. Mar. 25,

13 – OPINION & ORDER

2016) (social worker is deemed a non-medical "other source"; affirming ALJ's rejection of social worker's opinion because ALJ provided reasons germane to the witness in support).

Ms. Neighbours submitted an opinion dated February 24, 2015, in which she stated Plaintiff suffered from symptoms of schizophrenia including auditory hallucinations, delusional and paranoid thought processes, anhedonia, and asociality. Tr. 487. Ms. Neighbours reported Plaintiff's auditory hallucinations cause him significant distress and impair his abilities to complete tasks, maintain extended social interactions, organize and process cognitive information, concentrate, and sustain attention. Tr. 487. Ms. Neighbours indicated Plaintiff experiences paranoia "particularly when leaving his home or going to bed," and that he has attempted to work on multiple occasions, but was unable to sustain employment. Tr. 487.

Ms. Fricano submitted a letter to the Commissioner dated May 6, 2014, in which she opined Plaintiff's "psychotic symptoms account for the majority of his impairment, distress, and functional limitations, both at home and in the community." Tr. 334. Ms. Fricano reported Plaintiff "endorses daily visual and auditory hallucinations, delusional thought systems, pervasive paranoia, uncontrollable worry, dissociative episodes, and agitation." Tr. 334. Ms. Fricano also stated she had "observed him responding to internal stimuli" on "multiple occasions." Tr. 334. Ms. Fricano opined these symptoms "are not only distracting and disturbing for [Plaintiff], but also pose some safety risks." Tr. 334.

Ms. Fricano reported Plaintiff's "paranoia and agitation significantly affect his interpersonal/social functioning and ability to be in the community." Tr. 334. Ms. Fricano stated "[t]his extends not only to strangers and acquaintances, but also to his closest friends and family members, resulting in a general mistrust of others and a sense of isolation." Tr. 334. As a result, Ms. Fricano reported Plaintiff "does not attend to some activities of daily living, such as grocery

shopping and running errands, in efforts to avoid social interaction and decrease the potential for a verbal or physical altercation with someone in the community." Tr. 334–35. Ms. Fricano also stated "stress of any kind exacerbates [Plaintiff's] symptoms and suicidal ideation." Tr. 335. As a result, Ms. Fricano concluded that she "feel[s] strongly that [Plaintiff] would not be able to maintain gainful employment." Tr. 335.

The ALJ gave "no weight" to the opinions of Ms. Neighbours and Ms. Fricano on the basis that (1) they were inconsistent with the statements of Plaintiff and his wife, as well as the observations of the social-security investigator; (2) there are not any other medical or mental-health providers that observed Plaintiff responding to internal stimuli; and (3) they relied "quite heavily" on Plaintiff's subjective symptom reporting. Tr. 18–19.

As noted, both Ms. Neighbours and Ms. Fricano indicated Plaintiff suffers from a significant degree of social isolation and inability to function outside of his home. The ALJ reasonably found these assertions to be contradicted by Plaintiff's reports that he leaves his house to run errands and to go to the store on a daily basis (Tr. 35–36, 168), and the testimony of Plaintiff's wife who stated Plaintiff leaves the house "usually once a day" or "every other day" to go to the store or to visit close friends. Tr. 176. Moreover, the ALJ reasonably found the opinions of Ms. Neighbours and Ms. Fricano regarding Plaintiff's social limitations to be contradicted by the investigator's observation that Plaintiff's demeanor was "pleasant and appropriate" over the course of a 50-minute interview conducted on June 17, 2015. Tr. 503.

Moreover, the ALJ reasonably found both the opinions of Ms. Neighbours and Ms. Fricano to be reliant on Plaintiff's subjective symptom reporting, which the ALJ properly discredited. Throughout their treatment records, Ms. Neighbours and Ms. Fricano rely extensively on Plaintiff's subjective symptom reporting, including in Ms. Fricano's reported

observations of Plaintiff experiencing visual hallucinations during a therapy session. Tr. 266–67. Because the ALJ provided legally sufficient reasons to discredit Plaintiff's subjective symptom reporting, the ALJ properly discredited the opinions of Ms. Neighbours and Ms. Fricano on the basis that they relied on Plaintiff's unreliable subjective reporting. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The Court finds these reasons amount to germane reasons to discredit the opinions of Ms. Neighbours and Ms. Fricano. Accordingly, on this record the Court concludes the ALJ did not err when he discredited the opinions of Ms. Fricano and Ms. Neighbours because he provided legally sufficient reasons for doing so.

## CONCLUSION

For these reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 27 day of February, 2018.

MARCO A. HERNÁNDEZ
United States District Judge